UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DENTRELL BROWN, )<br>)<br>Petitioner, )<br>)<br>v. )<br>)<br>RICHARD BROWN, )<br>)<br>Respondent. ) | No. 1:13-cv-01981-JMS-DML |

**ORDER GRANTING PETITION FOR A WRIT OF HABEAS CORPUS**

Petitioner Dentrell Brown was found guilty of murder in an Indiana state court. Mr. Brown now seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. After this Court initially denied the petition, the Seventh Circuit Court of Appeals reversed the dismissal and remanded the case back to this Court for an evidentiary hearing on the issue of whether post-conviction counsel performed deficiently. Dkt. 48. For the reasons explained below, the Court concludes that an evidentiary hearing is not required, that Mr. Brown's post-conviction counsel performed deficiently, that procedural default of one of his claims is excused, and that he is entitled to relief because he received ineffective assistance of counsel at trial in violation of his Sixth Amendment rights when trial counsel failed to request a limiting instruction regarding a witness's recounting of incriminating statements made by Mr. Brown's codefendant.

Accordingly, Mr. Brown's petition for a writ of habeas corpus is **GRANTED**. A writ of habeas corpus shall issue ordering Mr. Brown's release from custody unless the State elects to retry Mr. Brown within 120 days of the entry of Final Judgment.

**I.
Background**

In February 2009, Mr. Brown was convicted in an Indiana state court of murder, and he

was sentenced to 60 years' imprisonment. His conviction was upheld by the Indiana Court of Appeals. *See D.B. v. State*, 916 N.E.2d 750, 2009 WL 3806084 (Ind. Ct. App. 2009) ("*Brown I*").[1] The Indiana Supreme Court denied transfer. *See D.B. v. State*, 929 N.E.2d 781 (Ind. 2010). Mr. Brown then sought post-conviction relief in state court, the denial of which was affirmed by the Indiana Court of Appeals. *See D.B. v. State*, 976 N.E.2d 146, 2012 WL 4713965 (Ind. Ct. App. 2012) ("*Brown II*").

District court review of a habeas petition presumes all factual findings of the state court to be correct, absent clear and convincing evidence to the contrary. *See Daniels v. Knight*, 476 F.3d 426, 434 (7th Cir. 2007). The Indiana Court of Appeals summarized the relevant factual background in *Brown I* as follows:

> On March 8, 2008, Elkhart police responded to a report of gunshots and discovered Gerald Wenger lying dead in the street with a single bullet wound to his head. Police discovered two bullet casings next to Wenger, one from a 9mm handgun and one from a .45 caliber handgun. Forensic analysis revealed Wenger's wound resulted from a 9mm bullet.
>
> Prior to the murder, Wenger had been using cocaine with some friends. Around 1:00 in the morning on March 8, 2008, Wenger left his apartment in a red and black Ford pickup truck to buy more drugs. At approximately 3:30 a.m. on March 8, 2008, Dan Holt, who lived in the same neighborhood where the murder occurred, got up to get ready for work. Holt noticed a red and black Ford pickup truck parked in an alley near his home. Ron Troyer, who also lived in the neighborhood, saw the same truck as he arrived home from work around 9:00 p.m. on March 8, 2009. As Troyer approached, he noticed two individuals near the truck. The individuals ran away when they saw Troyer, and Troyer called the police, who identified the red and black pickup truck as belonging to Wenger. However, forensic analysis of the truck did not reveal any fingerprints other than those belonging to Wenger.
>
> On June 18, 2008, the State charged D.B. with murder, a felony. Although D.B. is a minor, the juvenile court waived his charges to an adult felony court. The trial court held a jury trial from February 2nd to 5th, 2009, at which it tried both D.B. and codefendant Joshua Love. At the trial, the jury heard the testimony of Leiora Davis who lives in an apartment building near the murder scene. Davis testified that

---

[1] Because Mr. Brown was thirteen years old at the time of the murder, the Indiana courts referred to him by his initials.

sometime between the 22nd and 25th of February, 2008, D.B. visited her apartment. As D.B. bent over, a gun fell from his waist onto the floor. D.B. objected to Davis's testimony; however, the trial court admitted the testimony over D.B.'s objection, instructing the jury to consider the evidence "for the limited purpose of showing preparation and plan" and not for any other reason. Transcript at 358.

The State also presented the testimony of Mario Morris. Morris testified regarding individual conversations he had with D.B. and Love, in which each man separately confessed his respective involvement in Wenger's murder. Morris first testified about conversations he had with Love while both were in jail. Love told Morris he met Wenger on the night of the murder because Wenger wanted to buy some drugs. Love got into the back seat of Wenger's truck and attempted to sell Wenger a "gang pack," which is a substance that looks like crack cocaine, but is not really crack cocaine. When Wenger discovered the ruse, he stopped the truck and an argument ensued. Both men exited the truck and Love shot Wenger in the head with a 9mm handgun. Love then got back into Wenger's truck and travelled to a nearby alley. Love got out of the truck and went to hide his gun. He returned later to wipe down the truck so police could not find any fingerprints. During his testimony regarding his conversations with Love, Morris never mentioned the presence of a third party during the commission of the crime and never mentioned D.B. by name or by implication.

Morris next testified about conversations he had with D.B. while both were in jail. D.B. told Morris that he met up with Wenger on the night of the murder because Wenger wanted to buy drugs. D.B. got into the front seat of Wenger's truck and decided to try to sell Wenger a gang pack. When Wenger discovered the drugs were fake, an argument ensued and Wenger demanded his money back. Both Wenger and D.B. got out of the truck and continued arguing. D.B. then pulled out a .45 caliber handgun and struck Wenger on the side of his head. As D.B. struck Wenger with the gun, it fired, grazing Wenger. D.B. then told Morris he got back into Wenger's truck and drove to a nearby alley, where he left the truck. During his testimony regarding his conversations with D.B., Morris never mentioned the presence of a third party during the commission of the crime and never mentioned Love by name or by implication.

Although he had not objected to any of Morris's testimony, at the conclusion of Morris's testimony, D.B. moved for a mistrial. The trial court heard extensive arguments from all parties and ultimately denied the motion, noting that Morris's testimony regarding his conversations with each defendant did not inculpate the other defendant. At the conclusion of the trial, the jury found D.B. guilty of murder, a felony. On March 5, 2009, the trial court held a sentencing hearing, after which it sentenced D.B. to an aggregate term of sixty years with fifty-five years executed at the Department of Correction, and five years suspended to probation.

*Brown I*, 2009 WL 3806084, at *1-2.

After his convictions were affirmed on direct appeal, Mr. Brown filed a petition for post-conviction relief in state court. The petition was amended by counsel and raised a single issue—whether trial counsel was ineffective because he failed to file a motion to sever Mr. Brown's trial from that of Mr. Brown's codefendant. The post-conviction court denied the petition and the Indiana Court of Appeals affirmed, holding that the issue was barred by the doctrine of res judicata because it had been decided against Mr. Brown on direct appeal. *D.B. v. State*, 976 N.E.2d 146 (Ind. Ct. App. 2012). The Indiana Supreme Court denied transfer on December 14, 2012. Dkt. 14-4.

Mr. Brown filed the instant petition for a writ of habeas corpus on December 16, 2013. Dkt. 1. This Court denied the petition on December 3, 2015. Dkt. 31. The Seventh Circuit Court of Appeals reversed the dismissal of Mr. Brown's petition, holding that, as a matter of first impression, the *Martinez-Trevino* doctrine applies in Indiana. *Brown v. Brown*, 847 F. 3d 502, 513 (7th Cir. 2017) ("*Brown III*"). Therefore, ineffective assistance of post-conviction counsel may constitute cause and prejudice to overcome procedural default of Mr. Brown's claim that his trial counsel was ineffective when he failed to request a limiting instruction regarding a witness's recounting of incriminating statements made by Mr. Brown's codefendant. *Id.* at 517. The Seventh Circuit remanded the case to this Court for an evidentiary hearing on the issue of ineffective assistance of post-conviction counsel. *Id.*

## II.
## Applicable Law

### A. Federal Review of State-Court Convictions

A federal court may grant habeas relief only if the petitioner demonstrates that he is in custody "in violation of the Constitution or laws . . . of the United States." 28 U.S.C. § 2254(a). The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") directs how the Court

must consider petitions for habeas relief under § 2254. "In considering habeas corpus petitions challenging state court convictions, [the Court's] review is governed (and greatly limited) by AEDPA." *Dassey v. Dittmann*, 877 F.3d 297, 301 (7th Cir. 2017) (en banc) (citation and quotation marks omitted).

"The decision federal courts look to is the last reasoned state-court decision to decide the merits of the case, even if the state's supreme court then denied discretionary review." *Id.* at 302. The only claim addressed in this Order is a claim that was not raised in state court, therefore there is no state court opinion for this Court to review. If the Court determines that Mr. Brown has overcome procedural default of this claim, the Court will review the claim *de novo*.

### B. Ineffective Assistance of Counsel

A criminal defendant has a right under the Sixth Amendment to effective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). For a petitioner to establish that "counsel's assistance was so defective as to require reversal," he must make two showings: (1) that counsel rendered deficient performance that (2) prejudiced the petitioner. *Id.* "This inquiry into a lawyer's performance and its effects turns on the facts of the particular case, which must be viewed as of the time of counsel's conduct." *Laux v. Zatecky*, 890 F.3d 666, 673-74 (7th Cir. 2018) (citation and quotation marks omitted). "As for the performance prong, because it is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight, *Strickland* directs courts to adopt a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 674 (citation and quotation marks omitted). "The prejudice prong requires the defendant or petitioner to 'show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id.* (quoting *Strickland*, 466 U.S. at 694).

### C. Procedural Default and Ineffective Assistance of Post-Conviction Counsel

If a petitioner in custody pursuant to a state court judgment raises a claim on federal habeas review without first presenting it through "one complete round of the State's established appellate review process," that claim is procedurally defaulted. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *see also see also Hicks v. Hepp*, 871 F.3d 513, 530−31 (7th Cir. 2017). And a petitioner cannot obtain relief on a procedurally defaulted claim without showing either "cause and prejudice" to excuse the default or "that the court's failure to consider the defaulted claim would result in a fundamental miscarriage of justice." *McDowell v. Lemke*, 737 F.3d 476, 483 (7th Cir. 2013).

This Court originally held that two of Mr. Brown's claims were procedurally defaulted because Mr. Brown failed to present them throughout one complete round of state court review. Dkt. 21. This Court rejected Mr. Brown's claim that his post-conviction counsel's failure to raise his ineffective assistance of counsel claim in state court constituted cause and prejudice to excuse these defaults because Indiana courts do not confine claims of ineffective assistance of counsel to collateral review. *Id*. at 4 (citing *Nash v. Hepp*, 740 F.3d 1075, 1079 (7th Cir. 2014)). On appeal, the Seventh Circuit held that post-conviction counsel's ineffectiveness may be used to excuse a procedural default in Indiana state court. *Brown III*, 847 F.3d 502, 513; *Martinez v. Ryan*, 566 U.S. 1, 14 (2012). To overcome procedural default of his claim, Mr. Brown "must demonstrate that his collateral review counsel was deficient and must make a substantial claim of ineffective assistance of trial counsel." *Brown III*, 847 F.3d at 513 (citing *Trevino v. Thaler*, 569 U.S. 413, 423 (2013); *Martinez*, 566 U.S. at 13–17).

### III.
### Discussion

#### A. Procedural Default and Ineffective Assistance of Post-Conviction Counsel

Mr. Brown maintains that his trial counsel provided ineffective assistance by failing to request a limiting instruction that would have prevented the jury from using his codefendant's statement as evidence against him. He acknowledges that this claim was not raised in his state post-conviction proceeding and is therefore procedurally defaulted. As stated above, to overcome this default Mr. Brown must show (1) that post-conviction counsel performed deficiently, and (2) that his ineffective assistance of trial counsel claim has "some merit." *Martinez*, 566 U.S. at 14. The Seventh Circuit held that Mr. Brown "has presented a substantial claim of ineffective assistance of trial counsel, —sufficient to avoid the procedural default because he has demonstrated that the claim has some merit." *Brown III*, 847 F. 3d at 517. He has therefore satisfied the second prong of the test set forth in *Martinez*. The Seventh Circuit remanded this case for a determination of whether Mr. Brown's post-conviction counsel performed deficiently when she failed to raise a claim regarding trial counsel's failure to request a limiting instruction.[2]

1. <u>Post-Conviction Counsel's Deficient Performance</u>

To assess whether post-conviction counsel performed deficiently, the Court compares the "claims actually presented to those that might have been presented. Where counsel chose to pursue just one issue that was a virtually certain loser, [] a petitioner may show deficient performance by showing that a much stronger claim or argument was available." *Id*. at 514 (citations omitted); *see*

---

[2] The Seventh Circuit remanded the case for an evidentiary hearing on this issue, but, after extensive briefing, the parties have stipulated that a hearing is not necessary because the evidence concerning post-conviction counsel's performance is undisputed and underpins both the procedural default and merits analysis. *See* dkt. 67 at 4 ("The parties have agreed to stipulate to certain facts and/or the admissibility of exhibits the parties wish to use in their respective cases; thus, negating the need for live testimony and a hearing.").

*also Shaw v. Wilson*, 721 F.3d 908, 915 (7th Cir. 2013) (if an attorney "abandoned a nonfrivolous claim that was both 'obvious' and 'clearly stronger' than the claim that he actually presented, his performance was deficient, unless his choice had a strategic justification.").

Because this analysis necessarily includes consideration of the merits of Mr. Brown's underlying claim of ineffective assistance of trial counsel, this section will tip the Court's hand as to the merits of that underlying claim, which will be directly addressed in the following section.

Mr. Brown's post-conviction counsel did not include in Mr. Brown's state petition for post-conviction relief the issue of trial counsel's failure to request a limiting instruction. As the Seventh Circuit noted in its opinion, the only issue raised by post-conviction counsel was barred by *res judicata* and was therefore almost certain to fail. *Brown III*, 847 F. 3d at 513–14.

The Seventh Circuit remanded for an evidentiary hearing to garner testimony from post-conviction counsel regarding how she selected the issue she raised in Mr. Brown's state post-conviction petition. Mr. Brown and the respondent jointly moved the Court to expand the record to include an affidavit from Mr. Brown's post-conviction counsel. Dkt. 104. The Court granted that motion. Dkt. 106. Post-conviction counsel's affidavit reveals that foregoing the limiting instruction claim was not a strategic decision on her part, it just "simply did not occur to" her or anyone else in her office. Dkt. 104-1 at 3.

The respondent does not dispute this testimony, but instead argues that post-conviction counsel did not perform deficiently because Mr. Brown was not entitled to a limiting instruction at trial and failing to raise a losing issue is not deficient performance. This argument is based on the respondent's assertion that Mr. Brown's co-defendant's statements to another jail inmate, Mr. Morris, were not inadmissible hearsay against Mr. Brown because an exception, Indiana Rule of Evidence 804(b)(3), applied. Therefore, as the respondent's argument goes, a request for a

8

limiting instruction under Indiana Rule of Evidence 104 would have been denied by the trial court. Indiana Rule of Evidence 804(b)(3) states, in part, that "[a] statement or confession offered against the accused in a criminal case, made by a codefendant or other person implicating both the declarant and the accused, is not within this exception."

The respondent argues that since Mr. Love's statement to Mr. Morris did not implicate Mr. Brown, it was admissible. Dkt. 107 at 5-7. But the Seventh Circuit held that this testimony was inadmissible. *Brown III*, 847 F.3d at 516 ("Morris's testimony as to his conversation with Love, although admissible against Love, was inadmissible hearsay as offered against Brown."). Indiana case law supports this conclusion. In *Payne v. State*, 854 N.E.2d 7, 22 (Ind. Ct. App. 2006), the Indiana Court of Appeals found that a videotaped statement of a witness describing how he and others committed a crime "implicated" the defendant even though she was never named in the video. The allegations against the defendant were that she directed the crimes even though she wasn't present when they occurred. *Id.* So, the video describing the crimes as having occurred the way the defendant was accused of having ordered the crimes to occur "implicated" her without mentioning her. *Id.*

Similarly, although Mr. Love's statement may not have named Mr. Brown, it "implicated" him. Mr. Morris testified about Mr. Love's statement to him then immediately testified about Mr. Brown's statement to him. At one point, the prosecutor asked Mr. Morris a follow up question: "And did they actually try to sell him those gang packs?" Trial Tr. 555. The use of the plural "they," instead of the singular "he," makes clear that Mr. Love's statement implicated Mr. Brown, and vice versa. In addition, Mr. Love's statement that he got in the back seat of the victim's truck implicates Mr. Brown and lends support to Mr. Morris's testimony that Mr. Brown said he got in the front seat. Trial Tr. 547; 554.

For these reasons, the Court finds that hearsay testimony of Mr. Love's out-of-court statement was inadmissible against Mr. Brown and Mr. Brown would have been entitled to a limiting instruction had his trial counsel requested one.

The respondent argues in the alternative that trial counsel strategically chose not to request a limiting instruction because Mr. Love's statement would help deflect responsibility away from Mr. Brown. Dkt. 107 at 7-9. The problem with this argument is that a limiting instruction would not have prevented the jury from considering Mr. Love's out of court statement when assessing Mr. Love's responsibility for the crime, it only would have limited the use the statement against Mr. Brown. In other words, trial counsel could have argued to the jury that Mr. Love's confession made Mr. Love guilty, while still maintaining that the jury could not use Mr. Love's statements when considering the charge against Mr. Brown.

Trial counsel testified at the state post-conviction hearing that Mr. Love's counsel identified the potential problem with Mr. Morris's testimony and moved for a mistrial and that Mr. Brown's counsel joined that motion. Trial counsel testified that he did not consider asking the trial court to give a limiting instruction after the trial court denied the motion for mistrial. PCR Tr. at 8; 13-14. This testimony demonstrates that trial counsel did not make a strategic choice when he failed to ask for a limiting instruction.

Trial counsel died sometime between the state post-conviction hearing and the parties initiating discovery before this Court. Dkt. 67 at 4. Therefore, the respondent's alternative argument is based on a case citation found in trial counsel's notes. Dkt. 107 at 9. Even if it was trial counsel's strategy to forego a limiting instruction because he somehow thought Mr. Love's statement would be helpful to Mr. Brown, such a strategy would have been unreasonable. With a limiting instruction, trial counsel could have used Mr. Love's statement against Mr. Love, while

still preventing the jury from using Mr. Love's statement against Mr. Brown. There was no strategic reason not to ask for the limiting instruction.

For these reasons, post-conviction counsel performed deficiently when she failed to raise this viable issue during state post-conviction proceedings.

2. Procedural Default

The Seventh Circuit has already determined that Mr. Brown's underlying claim of trial counsel ineffectiveness has some merit. This Court has now determined that post-conviction counsel performed deficiently. Therefore, Mr. Brown has overcome procedural default of his claim that trial counsel provided ineffective assistance of counsel when trial counsel failed to request a limiting instruction as to Mr. Morris's testimony regarding Mr. Love's out-of-court statement. *See Martinez*, 566 U.S. at 14.

**B. Ineffective Assistance of Trial Counsel**

Although the Seventh Circuit determined that Mr. Brown's ineffective assistance of trial counsel claim has "some merit," that analysis is only a "threshold inquiry" rather than "full consideration of the merits," which this Court now undertakes. *Brown III*, 847 F.3d at 515.

1. Deficient Performance

As discussed above, the Seventh Circuit determined that Mr. Morris's testimony regarding Mr. Love's out-of-court statement was "inadmissible hearsay as offered against Brown." *Id.* at 516. Although trial counsel testified before his death that he did not consider requesting a limiting instruction, the respondent argues that a case citation in trial counsel's notes indicates that trial counsel made a strategic decision to forego requesting a limiting instruction. Trial counsel's testimony confirms that he did not make a strategic decision. If counsel had made a strategic choice, as respondent argues, such a strategy would have been objectively unreasonable because

11

it was of no benefit to Mr. Brown and only harmed him instead. Trial counsel could have, and should have, requested a limiting instruction so that the jury would have been prevented from considering Mr. Love's out-of-court statement when considering the charge against Mr. Brown. Trial counsel performed deficiently in this regard.

2. Prejudice

The Court next considers whether trial counsel's deficient performance prejudiced Mr. Brown. *Strickland*'s prejudice prong requires the petitioner to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694. This determination depends, in large part, on the strength of the evidence admissible against Mr. Brown.

Perhaps the most serious evidence against Mr. Brown was a reluctant one-word admission from a witness who said he overheard Mr. Brown confess. This witness also said that "he had a separate conversation in a car with Love, in Brown's presence, about the disposal of a .45 caliber handgun." *Brown III*, 847 F.3d at 516. This witness's credibility was marred by his admission that he was interested in reward money and that his cooperation in the case was motivated by a hope that it would keep his brother out of jail. *Id*.

As the Seventh Circuit noted, the remaining evidence is "circumstantial and not conclusive." *Id*. It includes witnesses who testified that he or she 1) saw Mr. Brown a "few weeks before the shooting with what she thought was a gun," 2) saw Mr. Love and Mr. Brown together several hours before the shooting, but the witness had trouble identifying Mr. Brown, 3) saw two boys by the victim's truck the morning after the shooting but did not identify Mr. Brown, 4) witnessed Mr. Brown "trying to sell a nine-millimeter handgun in the weeks following the shooting," and 5) heard Mr. Brown laugh when asked if he had murdered someone with a gun. *Id*.

at 516-17. None of this evidence puts Mr. Brown at the murder scene with Mr. Love. *Brown III*, 847 F.3d at 516. And Mr. Brown's statement to Mr. Morris was that he left the scene after hitting the victim in the head with a .45-millimeter gun which caused the gun to go off and graze the victim.[3]

While this evidence is legally sufficient to convict Mr. Brown of murder, there is a reasonable probability that he would have been acquitted if his counsel had secured a limiting instruction preventing the jury from using Mr. Love's out-of-court statement against him. Mr. Brown was prejudiced by his trial counsel's deficient performance at trial.

## IV.
## Conclusion

For the reasons explained above, Mr. Brown's petition for a writ of habeas corpus is **granted** because he did not receive effective assistance of counsel during trial in violation of his Sixth Amendment rights. Since Mr. Brown is entitled to relief on this claim, the Court need not reach his claim that trial counsel should have requested a justifiable reasonable force defense.

A writ of habeas corpus shall issue ordering Mr. Brown's release from custody unless the State elects to retry him within 120 days of entry of Final Judgment in this action.

Final Judgment in accordance with this decision shall issue.

**IT IS SO ORDERED.**

Date: 7/9/2020

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

---

[3] The victim was killed by a single nine-millimeter bullet. *Brown III*, 847 F.3d at 517.

Distribution:

Michael K. Ausbrook
mausbrook@gmail.com

Stephen R. Creason
OFFICE OF THE ATTORNEY GENERAL
steve.creason@atg.in.gov

Jesse R. Drum
INDIANA ATTORNEY GENERAL
jesse.drum@atg.in.gov